# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY BROOKS, Individually and on behalf of all other similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) SAFETY-KLEEN SYSTEMS, INC. and ) WILLIAM SCHADE, ) ) Defendants. ) | Case No. 11 C 7245<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Kelly Brooks ("Ms. Brooks") sues her former employer Safety-Kleen Systems, Inc. ("Safety-Kleen"), alleging that Safety-Kleen failed to pay her and other similarly situated employees overtime wages in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, et seq. Brooks asks the court to conditionally certify a collective action and send notice to the prospective members of the plaintiff class.

### I. BACKGROUND

Safety-Kleen develops and markets chemicals, cleaning materials, and environmental solutions for customers across the country. Ms. Brooks worked at Safety-Kleen's Dolton, Illinois facility. According to Ms. Brooks, she and other employees at Safety-Kleen's Dolton facility were regularly required to work more than forty hours per week without proper overtime compensation because Safety-Kleen required them to perform tasks both before and after their scheduled shifts.

Ms. Brooks alleges that she and other employees were required to don Personal Protective Equipment ("PPE") including work boots, protective shirts, protective pants, chemical resistant coveralls, helmets, protective eye wear, gloves, and breathing devices in an employee locker room prior to signing in for their shifts. Moreover, Ms. Brooks claims, Safety-Kleen then required employees to walk several hundred yards from the locker room to the work-site where the time clock was located. At the end of the day, Safety-Kleen required its employees to first sign out, then return to the locker room from the worksite, doff the PPE, and finally shower. Although Safety-Kleen allowed employees to clock out fifteen minutes before the end of their shift to compensate them for the time spent showering, Ms. Brooks alleges that the time allotted was insufficient to walk to the locker room, doff the protective clothing required by Safety-Kleen, and shower. Finally, in addition to the uncompensated time spent by the employees donning and doffing their PPE and showering at the end of their shifts, Ms. Brooks claims that Safety-Kleen prohibited employees from signing in more than seven minutes early, rounded to the start of the shift if an employee signed in less than seven minutes early, and encouraged employees to perform tasks during the seven minutes before the start of any scheduled shift, which collectively resulted in additional uncompensated time.

In support of her motion, Ms. Brooks points to her complaint, an affidavit that details her experience at Safety-Kleen and its policies related to PPE, and summary judgment materials in a related case, *Smith v. Safety-Kleen Sys., Inc.*, No. 10-CV-6574 (N.D. Ill. 2010).

## II. STANDARD OF REVIEW

The FLSA allows "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to sue an employer through a

collective action to recover unpaid overtime or minimum wages. 29 U.S.C. § 216(b). The FLSA does not specify how collective actions are to proceed, and district courts have discretion to manage the joinder of additional parties "to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). While the Seventh Circuit has yet to address how district courts should manage collective actions, courts in this district have commonly applied a two-part test to determine whether an FLSA claim may proceed as a collective action. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

In the first stage, a court issues a "conditional certification" of the collective action if the plaintiffs show there are similarly situated employees who are potential claimants. *Id.*; *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). At this stage, a plaintiff must make a "modest factual showing" sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010); *Jirak*, 566 F. Supp. 2d at 847. A modest factual showing requires "'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Jones v. Furniture Bargains, LLC*, No. 09 CV 1070, 2009 WL 3260004, at *2 (N.D. Ill. Oct. 9, 2009) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). However, the modest factual showing cannot be founded solely on allegations in the complaint. *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Instead, plaintiffs must provide some factual support in the form of affidavits, declarations, deposition testimony or other

documents for the allegations that other similarly situated employees were subjected to a common policy. *Id.* In the second stage, after the parties have engaged in discovery and the opt-in process is complete, the court reexamines the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial as a collective action. *Jirak*, 566 F. Supp. 2d at 848.

In this case, there is a twist. In 2010, another employee at Safety-Kleen's Dolton facility alleged that Safety-Kleen's donning and doffing practices violated the FLSA and sought certification of a collective action. *See Smith v. Safety-Kleen Sys., Inc.*, No. 10-CV-6574 (N.D. Ill. 2010). In that case, the court initially certified a collective action, noting that the plaintiff had presented a common question as to whether Safety-Kleen's policies and practices of requiring its operations specialists to don and doff protective clothing while they were not on the clock violated the FLSA. *Smith v. Safety-Kleen Sys., Inc.*, No. 10-CV-6574, 2011 WL 1429203, at *4-5 (N.D. Ill. Apr. 14, 2011). After discovery, however, the court concluded that the plaintiffs had not shown that the members of the collective action had the same job responsibilities. The court reasoned that the question as to whether the plaintiffs' principal activities necessitated changing clothes and showering therefore depended on individualized inquiries, making class treatment inappropriate. *Smith v. Safety-Kleen Sys., Inc.,* No 10-CV-6574, 2012 WL 162206, *8 (N.D. Ill. Jan. 18, 2012). Ms. Brooks was not a party to that suit or a member of the conditionally certified class. In addition, the proposed class in that class included employees who were operations specialists, while Ms. Brooks proposes a class of employees with different job titles.

Safety-Kleen argues that the court's decision in *Smith* should dictate the outcome in this case because "the issue of whether a segment of hourly employees at the Dolton Recycle Center can be properly certified as a class has already been litigated and decided." Safety-Kleen, in essence, implies that Brooks should be collaterally estopped from seeking to proceed in a collective action. The Seventh Circuit has unequivocally rejected an argument that a prior denial of class certification bars the certification of the same or similar class in a suit brought by a different plaintiff. *Smentek v. Dart*, 683 F.3d 373, 377 (7th Cir. 2012) (citing *Smith v. Bayer Corp.*, --- U.S. ---, 131 S.Ct 2368, 180 L.Ed.2d 341 (2011)).

Perhaps recognizing this precedent, Safety-Kleen argues that the court should give "respectful attention" to the decision in *Smith* pursuant to the notion of comity. Safety-Kleen points out that Ms. Brooks is represented by the same counsel as the plaintiff in *Smith*, and therefore has access to all the discovery generated in that case. In addition, Safety-Kleen notes that the class proposed by Ms. Brooks includes employees with numerous job titles and the class in *Smith* included employees with a single title. Safety-Kleen reasons that because the court in *Smith* found after discovery that the plaintiff had not demonstrated that the prospective members of the collective action were similarly situated, Ms. Brooks, who proposes to represent a broader class, could not possibly demonstrate that the potential members of the collective action she proposes are similarly situated. Consequently, Safety-Kleen suggests the court should discard the traditional two-step inquiry in collective actions and immediately hold Ms. Brooks to a higher standard by proceeding directly to the second step of the traditional FLSA collective action inquiry.

The court is reluctant to discard the traditional two-step inquiry. As Safety-Kleen observes, the proposed class here is different from that in *Smith*. Thus, the two actions are not "materially identical" and the court is "on [its] own" to determine whether class treatment is appropriate. *Smentek*, 683 F.3d at 377 (noting that unless two class actions are "materially identical," the principal of comity would not apply). First, although Ms. Brooks proposes a broad class, encompassing all employees at Safety-Kleen who were required to use PPE, discovery may reveal that some subsets of these employees who hold different positions than the plaintiff in *Smith* are similarly situated. Second, Ms. Brooks was not a member of the class in the conditionally certified collective action and might seek different materials to prove that the employees in her proposed class are similarly situated. Consequently, the court declines Safety-Kleen's invitation to discard the traditional two-step inquiry or to rely exclusively on the *Smith* court's decision to decertify the collective action in that case.

III. ANALYSIS

In 1946, the Supreme Court held that the time employees spent donning and doffing uniforms or other specialized work clothes was compensable under the FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692-93, 66 S.Ct. 1187, 90 L.Ed.1515 (1946). Congress, however, amended the FLSA with the Portal-to-Portal Act, 29 U.S.C. § 254, to exclude from compensation "activities which are preliminary to or postliminary to [an employee's] principal activity or activities." 29 U.S.C. § 254(a)(2). Subsequently, the Supreme Court has interpreted the Portal-to-Portal Act and held that activities such as washing, showering, or changing clothes are compensable under the FLSA only "if those activities are an integral and indispensible part of the principal

activities for which covered workmen are employed and are not specifically excluded" by the Act. *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956).

In *Steiner*, the Supreme Court considered whether employees of a battery manufacturer who spent thirty minutes donning protective clothing at the factory engaged in activities that were indispensible part of their employment. *Steiner*, 350 U.S. at 249-250. The Court observed that "under normal circumstances" showering and changing clothes would constitute preliminary or postliminary activities excluded from compensable work time. *Id.* at 249; *see also Pirant v. United States Postal Serv.*, 542 F.3d 202, 208 (7th Cir. 2008), *cert. denied*, --- U.S. --- , 130 S.Ct. 361, 175 L.Ed.2d 21 (2009) (holding that changing into and out of a uniform were preliminary and postliminary activities); 29 C.F.R. § 790.7(g) (noting that changing clothes, washing up, or showering are normally considered preliminary or postliminary activities). However, because the employees in *Steiner* worked with chemicals in the plant, including lead and its compounds, and it was "almost impossible" to keep the concentration of chemicals in the air within "absolutely safe limits," an industrial hygiene program with separate lockers for work and street clothing and free, clean work clothes protected both the company and the employees. *Id.* at 250-51, 256. The Court therefore held that the mandated use of protective clothing was indispensible to the employee's principal activity and therefore concluded that the time the employees spent donning and doffing that clothing was compensable. *Id.* at 250-51, 256.

In other words, in order to press an FLSA claim based upon the donning and doffing of clothing, a plaintiff must demonstrate that the changes in clothing are made necessary by the nature of the work performed and not merely an ordinary uniform.

7

*Steiner*, 350 U.S. at 249-50. The regulations promulgated by the Secretary of Labor make this distinction clear. 29 C.F.R. § 790.8(c). The regulations direct that if the employee cannot perform his principal activities without putting on certain clothes, changing clothes at the employer's premises at the beginning and end of the work day would be an integral part of the employee's principal activity. *Id.* On the other hand, if changing clothes at the worksite is merely a convenience to the employee, then it would be considered a "preliminary" or "postliminary" activity. *Id.*

The Seventh Circuit has not made explicit the test a district court should employ to determine whether donning and doffing are integral and indispensible parts of the employee's activities or merely a convenience. *See Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 596 (7th Cir. 2012) (holding that donning and doffing of personal protective equipment was an integral and indispensable part of the workers' main activity, but not setting forth any test to apply); *Pirant*, 542 F.3d at 208 (holding that changing into a uniform was different than donning and doffing personal protective equipment and therefore not an integral and indispensable part of the workers' main activity, but not setting forth any test). The Ninth Circuit, on the other hand, has set forth such a test. *Ballaris v. Wacker Siltronic Corp.*, 370 F3d 901, 910 (9th Cir. 2004); *IBP, Inc. v. Alvarez*, 339 F.3d 894, 902-903 (9th Cir. 2003). The Ninth Circuit held, among other things, that where donning and doffing at the worksite is required by law, company policy, or by the nature of the work performed, courts have held that it is an activity necessary to the principal work performed, and therefore compensable. *Ballaris*, 370 at 910; *Alvarez*, 339 F.3d at 902-03. Other circuit courts and at least two district courts in this circuit have adopted this approach. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350,

366 (4th Cir. 2011); *Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010); *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) *Dekeyser v. Thyssenkrup Waupaca, Inc.*, 2012 WL 2952360, at *6-7 (E.D. Wis. Jul. 19, 2012); *Leon v. El-Milagro, Inc.*, No. 11 CV 4255, 2012 WL 1032890, at *4 (N.D. Ill. Mar. 23, 2012).

Safety-Kleen first argues that Ms. Brooks has not made a modest showing that other employees at Safety-Kleen were subject to a common policy or plan that violated the law. The court disagrees. In her affidavit, Ms. Brooks avers that Safety-Kleen required her to wear PPE that included protective shirts and pants. (Brooks Aff. ¶¶ 7-9). In addition, the summary judgment materials in *Smith* reveal that Safety-Kleen had an extensive policy requiring the use of PPEs for large classes of employees based on the chemicals the employee worked with and the potential for exposure to harmful chemicals. (Rule 56.1(a)(3) Statement, Case No. 10 CV 6574, ECF No. 110, Exs. F & I). Further, Safety-Kleen's manual makes clear its policy exists to comply with OSHA requirements, which suggests that the donning and doffing of PPE is not only required by company policy but also by law. (Rule 56.1(a)(3) Statement, Case No. 10 CV 6574, ECF No. 110, Ex. F). Even the lowest level of protection, where there was no risk of "splashes, immersion, or potential for unexpected inhalation of any chemicals," required employees to wear PPE that included coveralls, gloves, boots and shoes that are chemical resistant, and safety glasses." (Rule 56.1(a)(3) Statement, Case No. 10 CV 6574, ECF No. 110, Ex. I).[1] More importantly, both Ms. Brooks's affidavit and the summary

---

[1] The fact that Safety-Kleen proscribed four different levels of PPE for its employees does not suggest that collective action is inappropriate. Rather, if all employees were required to wear some amount of PPE, then all employees have a potential FLSA claim, which varies only by the amount of time it took to don and doff the level of PPE required for a specific job. Thus, the varying level of PPE required suggests that different subsets within the class that depend on the level of PPE required might be appropriate. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448-49 (7th Cir. 2010) (approving use of sub-classes in FLSA actions).

judgment materials in *Smith* make clear that the policy applied to large numbers of Safety-Kleen employees. (Brooks Aff. ¶¶ 7-9; Rule 56.1(a)(3) Statement, Case No. 10 CV 6574, ECF No. 110, Exs. F, G, H, I, & V).

Brooks has put forward a modest factual showing that Safety-Kleen had a company policy requiring classes of its employees to don and doff PPE during periods while they were off-the-clock. Supreme Court and Seventh Circuit precedent suggests that these policies violate the FLSA because required donning and doffing of PPE constitutes an activity that is integral and indispensable to an employees' principal activities.

Safety-Kleen also argues that it provided a paid meal break and a fifteen-minute paid shower break, which together compensate Ms. Brooks and the potential members of the collective action for time spent donning and doffing PPE. Safety-Kleen's argument, however, depends on an analysis of facts that are not before the court, including: the amount of time it takes to don and doff PPE, the amount of time it takes to walk from the locker room where employees changed to the time clock, and whether meal breaks were paid or unpaid. It goes to the merits of Ms. Brooks's claims, and it is premature to resolve the dispute in the absence of missing data. *Anyere v. Wells Fargo Co.*, No. 09 CV 2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010).

Finally, Safety-Kleen argues that Ms. Brooks is not an adequate class representative. It argues that Ms. Brooks's claims are time-barred, pointing out that she was terminated more than two years before filing her complaint and that the FLSA has a two-year statute of limitations for non-willful violations. Safety-Kleen argues, without any citation, that the "uncertainty and lack of regulatory and judicial guidance" regarding

donning and doffing cases present a "strong likelihood" that Ms. Brooks will not be able to establish a willful violation (and thus be entitled to take advantage of the extended three-year statute of limitations). The court finds that Safety-Kleen overstates the uncertainty regarding FLSA donning and doffing cases. In any event, a strong likelihood is not a certainty, and Safety-Kleen's argument again goes to the merits of Ms. Brooks's claims. *See Anyere*, 2010 WL 1542180, at *3 (rejecting argument that collective action should not be conditionally certified when argument addressed merits of potential claim).

### IV. CONCLUSION

The court GRANTS Ms. Brooks's motion for conditional certification of a collective action. Safety-Kleen presents no objection to the form of notice proposed by Ms. Brooks and authorizes Ms. Brooks to distribute the notice attached as Exhibit A to her motion by first class U.S. mail to all current and former job non-exempt, hourly-paid employees of Safety-Kleen who were required to don and doff PPEs, take mandatory safety showers, and perform other unpaid work at Safety-Kleen's Dolton, Illinois facility. The notice shall specify that prospective plaintiffs must return the notice within 90 days of the date of this order.

IT IS SO ORDERED.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 14, 2012